Our case on the calendar for today is No. 21-2859, United States v. Blakstad. Thank you. May it please the court. I would like to discuss the issues that have to do with the testimony of the government's witness, Paul Hinton. The issues concerning constructive amendment, the sufficiency of the indictment, I think are addressed in the brief. So I would like to focus on this issue that occurred at trial. Mr. Hinton was called to testify and his testimony consisted of a rendition of the expenditures from certain accounts which were designed to support the government's contention that the money in those accounts was spent improperly and constituted, in essence, a badge of fraud. Tell us how he did anything more than trace ins and outs from that account and adopted the government's characterization of them. I'm specifically thinking of the loan versus investment issue. Yes. But I want you to tell us why he was not, although it was exhaustive or was a great deal of testimony, why he was not simply tracking ins and outs. Well, there are three points I need to make with respect to his testimony, Judge Stein. The first is with respect to his testimony regarding the particular witness who we say had lent money on a personal unsecured note that was unrelated to the transaction. He testified to the government's position and he testified to hearsay. Didn't he specifically say the government, I'm adopting the government's characterization of this as an investment, not as a loan? He did say that, yes, but it shouldn't have been a matter that was brooded before the jury in any way. The government in this regard engaged in a remarkable circular creation of evidence. There is a witness who would have testified to the nature of the transaction and his version was slightly different from the defendant's, but suffice it to say, the version that he gave the government ten days before the trial in an interview with government counsel was that the matter was a loan. The defendant said it was a loan ab initio and the witness said, well, it was initially investment, but within the week it was converted to a loan. In any event, that was critical evidence on the issue, the factual issue, which was necessary, we say, for the determination of fraud veiled on by the jury. Was this person giving $750,000 as a loan or was it an investment? That was the critical factual issue. The government elected not to call the witness. They had him available, they had interviewed him, they had him subpoenaed, had they chosen to call him, and instead of calling the witness, they evaded both the federal rule of evidence against hearsay and the Sixth Amendment right of confrontation of the defendant by saying to the witness, he's an investor. He put this money in, you treat him as an investor. The witness then says, well, he was an investor. I was told he was an investor, I treated him as an investor, I counted this money as though he were an investor, and then in closing argument, the government says, well, he was investor because Mr. Hinton testified he was an investor. So we have an interesting and unique circular creation of evidence. Well, the government didn't say it had not told Hinton to classify that as an investment, did it? Your Honor, the, no, they never did. They, as a matter of fact- And it was up to the jury then to make the determination. But that determination was a factual determination that rested on the issue of the credibility or the facts that would have been testified to by that witness to evade the necessity of calling the witness. They engaged in this ruse of using a summary witness to testify about the substance of an underlying transaction, which was contested. In other words, they were admitting hearsay, which they themselves had created by telling their witness, he's an investor. Testify he's an investor, treat him as an investor. Testify that the government told me to treat it as an investment. And that is, is it not, Judge Stein, under the federal rules of evidence, classic hearsay. The government told me he was an investor, says the witness. I treated him as an investor, says the witness. And the government, in closing argument, says, oh, by the way, he was an investor. And Mr. Hinton says he was an investor. Would you, can I just, if instead of testifying in that fashion, if Mr. Hinton had said, well, I'm just going to assume for purposes of making my calculations that this person was an investor. And because that's what the government told me, I don't know, but I'm assuming that for this calculation. Would there still be a problem in your mind? There would. To my mind, the problem would be one of relevance. And also, if I could, Judge Lee, in answering your question, may I go to the other issue, which I meant to allude to in answering Judge Stein's question, which was this. This testimony, which the government tried to say was merely summary witness testimony, is testimony that implicates some important evidentiary principles. And even if, in answer to your question, Judge Stein, even if it's, albeit through computer, a complicated adding machine process, the issue of what technique is used for tracing is itself an issue which implicates Daubert. And the necessity to have a reasoned decision by the district court as to whether the application of this technique, whether or not the mathematical calculations are merely, albeit complicated, a matter of using either an abacus or a computer, but a merely ministerial function. The issue of whether you use FIFO or LIFO, for instance, that implicates the issue of the appropriate expert technique to be used in doing the mathematical calculations. So, for instance, the government says in this case, well, it's just like Lebedev. In Lebedev, the witness testified as your Honor indicated. That is to say, he said, well, the government told me to use FIFO. First in, first out. I'm just doing what they told me to. I don't know whether it's right or wrong. Although it is intuitive, and this explains things, says the witness in Lebedev. And in this case, relying on Lebedev, the government says, we're going to use a completely different, and in fact, antithetical method of tracing analysis, which is LIFO, last in, first out. And here, in this court, they say, well, Lebedev, which says, if the government says it's FIFO, that's okay, because it's just calculating the things. In this case, they said, well, we wanted LIFO in this case. Because it would have, it just happens to be that that was most favorable to the position that they wanted to assert. When in fact, there is an important issue about what is the accounting technique that is necessary. And it involves the necessity for the district court judge to say, all right, I understand how LIFO applies, or FIFO applies, or the lowest intermediate balance applies. And here is what I say is the appropriate analysis. So in other words, I don't think, Judge Lee, that they can get around it by simply saying, assuming for the purposes of, when they need also to address the underlying issue of, what's the appropriate analysis? And we cited in our brief, all of the cases where in various courts and various areas of law, bankruptcy, civil forfeiture, where there is tracing of bank accounts, and this court's decision in Banco Cafeterio Panama, for instance, which discusses the various techniques. All of those things are implicated and were implicated. But I should shut up and sit down, because I don't want to run over my time. We've reserved a couple minutes for rebuttals. Thank you. Thank you so much. We'll hear from the government. May it please the court. My name is Jared Leno. I'm an assistant U.S. attorney in the Southern District of New York. I represent the United States in this appeal, as I did in the district court below. The defense arguments here are without merit. And I just note as an initial matter that there were seven counts in this case, the first five related to insider trading. There are no appellate issues on those first five counts. The appeal solely relates to counts six and seven, which are the investment fraud counts. And I want to directly address the first argument that defense counsel made, relating to the White Sands investment. And just for context, White Sands was one of a number of investors in this case. And there was talk of the summary witness. The summary witness presented, I think, precisely what your honor mentioned about assumptions and then working out how the math would follow. There were multiple tables, a table for each investor, showing how each investor's funds were treated. And the witness said specifically he was given the assumption that each of these people were investors. And so the jury had essentially a multiple choice option. They could see how each individual investor was treated. White Sands was only one of a number of investors. So just to kind of, that's important context. It's not as if there was a loss amount requirement here for conviction. There were multiple different investors and fraud as to any one of them in this scheme was sufficient. So that's just some context I think is important to keep in mind. The arguments that defense counsel made on White Sands have nothing to do with the other multiple investors, including the four other investors who did directly testify about their being defrauded. I'll just pause there for a moment. Now, turning to this point about whether there was hearsay from Mr. Hinton. I would submit that the record shows that Mr. Hinton testified exactly what your Honor said concerning the assumption point. He was, he had no first-hand knowledge. He made this explicit both on direct and cross-examination. Made very clear he had no first-hand knowledge of any of these facts. He was given the assumption by the government about who was an investor. And he worked from that assumption. There was an independent factual basis in the record as to every single one of these investors. Some testified directly, but as to White Sands and several others. This was a corporate bank account. There were documents submitted as part of the fraud that said specifically, this is a startup in a capital raise and investor funds be placed in this company bank account. White Sands, those White Sands funds went into the company bank account during a capital raise. That was the independent factual basis for that assumption to be made. And this court has held before, such as in the Regas case, that a summary witness may be given factual assumptions. And again, the record was perfectly clear on this. It's a factual assumption by Hinton. And so there was an independent factual record in this case about the bank account, the documents, the brochures are provided to investors about how the bank account would be used. And this occurred during a capital raise for a purported energy startup. So again, the assumptions were clear. Independent factual basis. This court's precedent in Regas says directly that that is perfectly permissible. It is absolutely not perjury. The facts here, as assumed by Hinton, were accurate. And the jury had multiple other options on which they could look at multiple investors for the fraud point. So I think, I think that those facts directly contradict this argument being made by defense counsel. Does it make a difference that the Lebedev case was FIFO and here is LIFO, or do I have that right? Absolutely no difference, Judge. Both of them are simply, money is, of course, fungible. And when you're engaging in a trace analysis, you have to pick some rule of thumb or some formula. FIFO and LIFO are formulaic in precisely the same way. And in both cases, an assumption was provided. And I think also just to note, in this case, again, this is not necessary for the court to decide, but just an additional alternative basis, this court has said that such a formulaic analysis is not expert testimony. But even more in this case, it wouldn't even matter. And that's because FIFO versus LIFO, the critical distinction comes if a bank account has a lot of money in it from day one. And then the fraud begins, right? Because then, if you have initial kind of legit money, well, then the question is, well, do you look to that legit money as the source of the subsequent personal spending, or is it the later deposited investor spending? In this case, for at least a number of these investors, the balance in this account was very, very low. Corey Legit is one example of that. There was virtually no money or a very small amount of money in the account before Mr. Legit's investment came in. The money comes in, and you can look right at the Bank of America records. There's then withdrawals for expensive restaurants, trips to Vegas, and so forth, right after the money comes in. So, Judge, it does not matter whether it's LIFO or FIFO in terms of the legal issue, whether it's expert testimony, but moreover, as a factual issue, it was not material in this case. If the court has no further questions, I'll sit down. Thank you, Counsel. Mr. Iredell, you're preserved three minutes per. Thank you, Judge Park. I need to say three different things. The first is, with respect to the question, would it be okay if they said, well, just assume he's an investor, and taking that assumption, give your testimony. The answer is, yes, that would have been appropriate, assuming everything else was right, but only if there had been some independent evidence that, in fact, this was an investment and not a loan. Counsel says, well, this was placed in a corporate account. Well, not really, because what the government argued is, this account was used for corporate funds and personal funds, and the whole reason why they used the analysis they did, which was FIFO, was to try to show that the money that was in the account, which should have been used for one purpose, was used for a personal purpose, and there were multiple personal and corporate expenditures from the same two accounts that were involved. The reason why Tucci's testimony, which the government never bothered to proffer, was so important was this. The defense in this case was, the defendant did not do a very good job of accounting, but he had no intent to defraud, because not only did he use all of the investor's money in the business venture that was involved, he also put in much of his own money, and whether that defense made sense or not depended on the issue of whether Tucci was an investor or whether that money was given to Mr. Blackstat as a personal loan. Two points. One, Tucci's money is only part of the investments here. There were a number of other investments. And secondly, whether or not he had the intent to defraud, it seems to me, was an appropriate question for the jury, and the jury answered it. Well, the answer to the two points that you put to me, Judge Stein, are as follows. One, you're correct, Tucci was one of many. They called four separate investors who testified and elected not to call him, even though he provided $750,000, which they said was an investment, which was the largest, and which constituted nearly 55% of the total amount of investments. The total amount the government said was invested was 1.469 million. And we said, no, you have to exclude Tucci, and the total amount was slightly more than 700,000. And we produced evidence that Mr. Blackstat spent in the business venture that the corporation did more than 1.1 million. The second point, Your Honor, with respect to the intent to defraud being a jury issue, Your Honor, is 100% correct, it was the defense, it was a jury issue. And that's why the amount of money. In other words, our argument was, look, money going in, money going out. This defendant did not do a very good job of accounting or engaging in proper segregation of funds in the appropriate accounts. But he had no intent to defraud, why? Because he got $700,000 in investments and he spent $1.1 million in trying to make the project work. And therefore, since he kicked in $400,000 of his own money, he wasn't looking to do a fraud on anybody. That argument works if it's $700,000 invested, and the argument doesn't work if it's $1.5 million invested. And what they did by this ploy was to avoid the necessity of presenting an independent proof that this was an investment that amounted all told to 1.5. But by taking out more than half of it and not calling the witness and manipulating as they did, they got to argue, no, there was 1.5 million in investment. And he only spent 1.1 on the project, he stole 400,000 for personal consumption. That was why this issue was so critical, and why the Sixth Amendment and the hearsay issue is also critical in analyzing the issue of Hinton's testimony. I appreciate the court's time, and I wish everyone a happy St. Patrick's Day. Thank you, counsel. Thank you both. We'll take the case under advisement.